# United States Court of Appeals

### For the Eighth Circuit

_____

No. 16-2229

_____

Michele Donaldson, Individually and as Special Administratrix of the Estate of
Phillip Donaldson, Deceased

*Plaintiff - Appellant*

v.

National Union Fire Insurance Company of Pittsburgh, PA

*Defendant - Appellee*

_____

Appeal from United States District Court
for the Eastern District of Arkansas - Batesville

_____

Submitted: January 13, 2017
Filed: July 24, 2017
[Published]

_____

Before COLLOTON, GRUENDER, and KELLY, Circuit Judges.

_____

KELLY, Circuit Judge.

While on his delivery route, Phillip Donaldson's truck was struck by an oncoming vehicle that crossed the center divider. Mr. Donaldson died on impact. His wife, Michele Donaldson, filed a claim for accidental death and spousal benefits under a Blanket Accident Insurance Policy (the Policy) issued to Mr. Donaldson's

employer, Schwan's Shared Services, LLC (Schwan's), by National Union Fire Insurance Company of Pittsburgh, Pennsylvania (National Union). National Union denied the claim, concluding coverage was excluded under the Policy. On a stipulated record, the district court[1] upheld National Union's denial of benefits and dismissed the complaint. Ms. Donaldson appeals that decision, and we affirm.

## I. Background

Mr. Donaldson's accident occurred on December 11, 2013. At the time of the accident, he was driving a Schwan's truck on his delivery route and was undisputedly within the scope of his employment with Schwan's. Mr. Donaldson's truck was struck by an oncoming vehicle that was operated by a woman who was not employed by Schwan's. She was also killed in the accident.

The Donaldsons were insured under the Policy at the time of the accident. The Policy is an employee-benefit plan governed by the Employee Retirement Income Security Act (ERISA) that provides insureds with "needed financial security in the event of an accidental death or accidental injury" "when traveling on business." As relevant, the Policy provides coverage for injuries sustained as a result of an accident that "occurs under the circumstances described in a Hazard applicable to that person."

After Mr. Donaldson's death, Ms. Donaldson filed a claim under Hazard H-12, entitled "24-Hour Accident Protection While On A Trip (Business Only)." National Union denied the claim on the ground that coverage was excluded under Hazard H-12 because at the time of his death, Mr. Donaldson "was operating a conveyance he had been hired to operate." Following the denial, Ms. Donaldson exhausted her administrative remedies and then filed suit in state court. The complaint seeks an

---

[1]The Honorable James M. Moody, Jr., United States District Judge for the Eastern District of Arkansas.

accidental death benefit on behalf of Mr. Donaldson's estate equal to ten times his annual base earnings, or $286,000, and a spousal benefit of $50,000. National Union removed the action to federal court. The parties filed a stipulated record and briefing regarding the denial of coverage. The district court found National Union reasonably interpreted the Policy language and did not abuse its discretion in denying coverage. The court dismissed the compliant with prejudice, and Ms. Donaldson appealed.

## II. Discussion

The parties agree that the abuse of discretion standard applies to National Union's denial of benefits because the Policy "grants the plan administrator . . . discretion to interpret the plan and to determine eligibility for benefits." Hampton v. Reliance Standard Life Ins. Co., 769 F.3d 597, 600 (8th Cir. 2014). "Under this standard of review, we must uphold [National Union]'s decision so long as it is based on a reasonable interpretation of the [Policy] and is supported by substantial evidence." Id. Where, as here, "a plan administrator holds the dual role of evaluating and paying benefits claims," this conflict of interest should be considered "as a factor in determining whether the plan administrator has abused its discretion." Manning v. Am. Republic Ins. Co., 604 F.3d 1030, 1038 (8th Cir. 2010). Because the record in this case contains no evidence about National Union's "claims administration history or its efforts to ensure that claims assessment is not affected by the conflict," we only "give[] the conflict some weight." Darvell v. Life Ins. Co. of N. Am., 597 F.3d 929, 934 (8th Cir. 2010).

The central issue on appeal is National Union's interpretation of the language in Hazard H-12. To determine if a plan administrator's interpretation of policy terms is reasonable, the court examines:

> [1] whether their interpretation is consistent with the goals
> of the Plan, [2] whether their interpretation renders any

language of the Plan meaningless or internally inconsistent, [3] whether their interpretation conflicts with the substantive or procedural requirements of the ERISA statute, [4] whether they have interpreted the words at issue consistently, and [5] whether their interpretation is contrary to the clear language of the Plan.

King v. Hartford Life & Accident Ins. Co., 414 F.3d 994, 999 (8th Cir. 2005) (en banc) (quoting Finley v. Special Agents Mut. Benefit Assoc., Inc., 957 F.2d 617, 621 (8th Cir. 1992)). Though these factors "inform our analysis," id., "[t]he dispositive principle remains . . . that where plan fiduciaries have offered a reasonable interpretation of disputed provisions, courts may not replace [it] with an interpretation of their own—and therefore cannot disturb as an abuse of discretion the challenged benefits determination." Id. (alterations in original) (internal quotation omitted).

Hazard H-12 applies to an injury sustained by a person "1. While on the Business of the Policyholder;[2] and 2. during the course of any Trip[3] . . . made by such person." A subsection of Hazard H-12 specifically addresses its applicability to a person traveling on a conveyance. It states:

> With respect to any period of time such Insured Person is traveling on a conveyance during the course of any such

_____

[2]As relevant here, the Policy defines "While on the Business of the Policyholder" as "while on assignment by or at the direction of the Policyholder for the purpose of furthering the business of the Policyholder, but does not include any period of time . . . while the insured is working at his or her regular place of employment."

[3]As relevant here, the Policy defines "Trip" as "a trip taken by an Insured which begins when the Insured leaves his or her residence or place of regular employment for the purpose of going on the trip (whichever occurs last), and is deemed to end when the Insured returns from the trip to his or her residence or place of regular employment (whichever occurs first)."

-4-

trip, Hazard H-12 applies only with respect to Injury sustained by the person:

1.      while operating or riding in or on (including getting in or out of, or on or off of), or by being struck or run down by any conveyance being used as a means of land or water transportation, except:

      a.      any such conveyance the Insured Person has been hired to operate or for which the Insured Person has been hired as a crew member and while the Insured Person is performing as an operator or crew member on any such conveyance; or

      b.      any such conveyance the Insured Person is operating, or for which the Insured Person is performing as a crew member, (including getting in or out of, or on or off of) for the transportation of passengers or property for hire, profit or gain[.]

National Union argues that because Mr. Donaldson was hired to operate the conveyance he was driving and was operating it at the time of the accident, the exception in Hazard H-12(1)(a) applies and there is no coverage. Ms. Donaldson argues that coverage is required under Hazard H-12(1) because Mr. Donaldson died as a result of being struck by a conveyance that he had not been hired to operate and was not operating at the time of the accident. At the time of the accident, Mr. Donaldson was both operating a conveyance and was struck by another one. Thus, as applied to the facts of this case, the issue is whether the language "any such conveyance" means the exception applies if Mr. Donaldson was hired to operate any of the conveyances involved in the accident, or whether it applies only if he was hired to operate the conveyance that caused his injury.

We conclude that the disputed language in Hazard H-12—"any such conveyance"—is ambiguous as applied to Mr. Donaldson's accident. While "any" implies that all applicable uses of the conveyance are subject to the exception, "such" implies a specific conveyance, namely the one that is associated with the "Injury sustained by the person." Therefore, it is not clear whether the exception applies to the conveyance operated by Mr. Donaldson or the conveyance he was struck by.[4]

Where, as here, the terms of a plan are susceptible to multiple, reasonable interpretations, an administrator's choice among the reasonable interpretations is not an abuse of discretion. See Ingram v. Terminal R.R. Ass'n of St. Louis Pension Plan for Nonschedule Emps., 812 F.3d 628, 637 (8th Cir. 2016); Darvell, 597 F.3d at 936; West v. Local 710, Int'l Bro. of Teamsters Pension Plan, 528 F.3d 1082, 1085–86 (8th Cir. 2008). Although Ms. Donaldson's interpretation of Hazard H-12 is a reasonable one, National Union's interpretation is equally reasonable. In such circumstances, "this Court defers to [National Union]'s interpretation of the disputed phrase," "even if the court would interpret the language differently as an original matter." Darvell, 597 F.3d at 935–36.

The remaining factors support the conclusion that National Union's application of the exception in Hazard H-12 was not an abuse of discretion. See Finley, 957 F.2d at 621. As to the first factor, National Union's interpretation accords with the goal of the Policy to cover accidents that occur while an insured is on a business trip. Hazard H-12 does not cover accidents that occur "while the Insured is working at his or her regular place of employment." It is undisputed that at the time of the accident Mr. Donaldson was driving a Schwan's truck as part of his regular duties delivering products to customers. Because Mr. Donaldson was not on a business trip, but

---

[4]Although the court can look to extrinsic evidence to determine the meaning of ambiguous language in an ERISA plan, see Maytag Corp. v. Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., 687 F.3d 1076, 1084 (8th Cir. 2012), the parties here have provided no such evidence.

instead was at his regular place of employment at the time of the accident, National Union's interpretation of Hazard H-12 is consistent with the goals of the Policy. Ms. Donaldson argues, under factor two, that National Union's interpretation renders the language "struck . . . by" in Hazard H-12(1) meaningless. Rather than render the language meaningless, National Union merely relies on a separate provision of Hazard H-12(1) equally applicable to the facts of Mr. Donaldson's accident. As to the remaining factors three and four, we have no indication that National Union's interpretation contravenes ERISA's requirements or that National Union has taken inconsistent positions in the past.

Ms. Donaldson's textual arguments have some force, but they do not persuade us that the phrase "any such conveyance" is susceptible of only one reasonable interpretation. Because the Policy gives National Union "full discretionary authority to interpret [its] terms," we cannot find that National Union's interpretation of the exception in Hazard H-12 was unreasonable. Accordingly, National Union did not abuse its discretion in denying Ms. Donaldson's claims for accidental death and spousal benefits.

### III. Conclusion

For the foregoing reasons, we affirm the decision of the district court.

_____