**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**October 4, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

---

DORI ATKINS,

      Plaintiff-Appellant,

v.

SBC COMMUNICATIONS, INC.;
SBC DISABILITY INCOME PLAN;
SEDGWICK CLAIM
MANAGEMENT SERVICES, INC.,

      Defendants-Appellees.

No. 05-5081
(D.C. No. 03-CV-00839-K(M))
(N.D. Okla.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TYMKOVICH**, **McKAY**, and **BALDOCK**, Circuit Judges.

---

Plaintiff Dori Atkins worked as a pay telephone technician for defendant

SBC Communications, Inc. (SBC) and participated in the defendant SBC

Disability Income Plan (Plan). SBC self-insures the Plan and is the plan

---

[*]      After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. The court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

administrator and fiduciary. Pursuant to its power to delegate, SBC designated defendant Sedgwick Claim Management Services, Inc. (Sedgwick) as the claims administrator for the disability Plan with the authority to determine eligibility for benefits.[1]

Ms. Atkins suffered from mental health concerns. Although Sedgwick approved periods of short-term disability benefits for her condition, it later denied her request for continued benefits. Ms. Atkins challenged that decision in the district court, relying on the Employee Retirement Income Security Act (ERISA), 29 U.S.C. §§ 1001-1461. Adopting the magistrate judge's report and recommendation, the district court decided that Sedgwick's denial of short-term disability benefits was not arbitrary and capricious. The court therefore granted defendants' motion for summary judgment.

Ms. Atkins appeals, arguing that (1) the district court should have applied a sliding scale arbitrary and capricious standard of review and (2) even under a pure arbitrary and capricious standard of review, the denial of benefits was not supported by substantial evidence in the administrative record and there were other indicia that the denial of benefits was arbitrary and capricious. We affirm.

---

[1] Sedgwick administers the SBC Medical Absence and Accommodations Resource Team (SMAART), which is the administrator for SBC's short-term disability plan. Aplt. App., Vol. 3 at 854.

BACKGROUND

From May 7 to 11, 2003, Ms. Atkins received inpatient treatment for major depression and severe anxiety. On May 13, she submitted a claim for short-term disability benefits, which Sedgwick approved for the time period of May 14 through May 27. On May 30, Ms. Atkins underwent foot surgery and sought permission to remain on short-term disability related to this surgery. Sedgwick approved a continuation of short-term disability benefits through June 22 and, later, through July 13. On July 14, Ms. Atkins returned to work.

On September 10, 2003, she again requested short-term disability benefits based on a relapse of her major depression and severe anxiety. She had received inpatient mental health treatment from September 5 to 9. Sedgwick approved the relapse claim and granted short-term disability benefits through October 19.

On October 22, 2003, Sedgwick denied continued short-term disability benefits effective October 20, because Ms. Atkins' medical evidence was insufficient to support her claim for continued benefits. Ms. Atkins appealed, submitting additional evidence. Sedgwick denied the appeal because neither Ms. Atkins' psychiatrist, Dr. David L. Shadid, nor her counselor, Trinna Burrows, had conducted a formal mental status examination and instead had based their findings on Ms. Atkins' self-reports. Aplt. App., Vol. 1 at 130. Sedgwick determined that the lack of objective findings failed to substantiate Ms. Atkins' inability to perform job duties.

After receiving notice of the denial of short-term disability benefits from Sedgwick, Ms. Atkins filed this ERISA action in district court alleging wrongful denial of benefits. *See* 29 U.S.C. § 1132(a)(1)(B) (permitting plan participants to bring civil action to recover benefits under plan). Both parties filed motions for summary judgment. Adopting the magistrate judge's report and recommendation, the district court granted defendants' motion and denied Ms. Atkins' motion. Finding no conflict of interest requiring that it apply a heightened arbitrary and capricious standard of review, the district court concluded that under a pure arbitrary and capricious standard of review, it must uphold the denial of disability benefits. The court found that Sedgwick's decision was supported by the opinions of three physicians who had reviewed the medical record. This appeal followed.

## DISCUSSION

### I.

When the district court grants a motion for summary judgment, we review de novo, applying the same standards the district court applied. *Adamson v. Unum Life Ins. Co. of Am.*, 455 F.3d 1209, 1212 (10th Cir. 2006). "Summary judgment is appropriate where no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)).

In addition to applying summary judgment standards, we must apply the standards of review applicable to ERISA actions. In doing so, we review de novo the district court's legal conclusion that the pure arbitrary and capricious standard was the proper standard to apply when reviewing Sedgwick's decision. *See DeGrado v. Jefferson Pilot Fin. Ins. Co.*, 451 F.3d 1161, 1167 (10th Cir. 2006). Also, we review the district court's application of that standard de novo. *Id.*

"When an ERISA plan grants a plan administrator (or its delegate) discretion in administering the plan, we will uphold its decisions unless they are arbitrary or capricious." *Gaither v. Aetna Life Ins. Co.*, 388 F.3d 759, 767 (10th Cir. 2004) (citing *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)). The parties agree that under the circumstances presented here the arbitrary and capricious standard of review applies. *See Fought v. Unum Life Ins. Co. of Am.*, 379 F.3d 997, 1003 (10th Cir. 2004) (per curiam). They, however, do not agree how much deference should be given to Sedgwick's decision to deny Ms. Atkins short-term disability benefits.

Ms. Atkins argues that the district erred in applying a pure arbitrary and capricious standard of review. Instead, she contends that a sliding scale arbitrary and capricious standard should apply because SBC was the plan administrator over its self-insured plan; it retained sole discretion and absolute power over the plan, including the power to decide her and other claimant's entitlement to benefits; and it therefore had a conflict of interest. Defendants counter that there

is no conflict of interest requiring application of a sliding scale arbitrary and capricious standard of review.

When there is a conflict of interest, the reviewing court must conduct a sliding scale analysis. *Finley v. Hewlett-Packard Co. Employee Benefits Org. Income Prot. Plan*, 379 F.3d 1168, 1175 (10th Cir. 2004). "Under [the sliding scale] approach, the reviewing court will always apply an arbitrary and capricious standard, but the court must decrease the level of deference given to the conflicted administrator's decision in proportion to the seriousness of the conflict." *Fought*, 379 F.3d at 1004 (quotation omitted).

In deciding whether to apply a pure or sliding scale arbitrary and capricious standard of review, we consider the plan documents and the contractual agreement between SBC and Sedgwick to ascertain their powers. The Summary Plan Description for the Plan seemingly gives unlimited power to SBC in all respects:

> The Plan Administrator is the named fiduciary of the Plan and has the power and duty to do all things necessary to carry out the terms of the Plan. The Plan Administrator has the sole and absolute discretion to interpret the provisions of the Plan, to make findings of fact, determine the rights and status of participants and others under the Plan, and decide disputes under the Plan. To the extent permitted by law, such interpretations, findings, determinations, and decisions shall be final and conclusive on all persons for all purposes of the Plan.

Aplt. App., Vol. 3 at 735.

But the contract between SBC and Sedgwick specifically recognizes that SBC has delegated some of its functions as plan administrator to Sedgwick. The contract provides that "except as delegated to" Sedgwick, SBC retains ultimate responsibility with respect to the Plan. *Id.* at 767. And Sedgwick is specifically delegated authority to review and process all short-term disability claims. *Id.* at 769, 774. Indeed, under the Plan, the

> Claims Administrator[, Sedgwick,] . . . to whom claim determination or review authority has been delegated shall have full and exclusive authority and discretion to grant and deny claims under the Plan, including the power to interpret the Plan and determine the eligibility of any individual to participate in and receive benefits under the Plan. The decision of . . . a Claims Administrator . . . on any claim . . . shall be final and conclusive . . . .

*Id.*, Vol. 2 at 368.

Construed together, the plan documents and the contract between SBC and Sedgwick establish that Sedgwick has the power to make final and conclusive short-term disability decisions. Thus, the plan documents and contract do not support Ms. Atkins' argument that the sliding scale arbitrary and capricious standard of review should apply.

Ms. Atkins cites *Williams v. BellSouth Telecommunications, Inc.*, 373 F.3d 1132 (11th Cir. 2004), as authority for applying a sliding scale arbitrary and capricious standard of review. We agree with the district court that *Williams* is distinguishable. In *Williams*, BellSouth Telecommunications, Inc. (BellSouth), the plan administrator, employed Kemper Risk Management Services, Inc.

(Kemper) as its claim administrator. *Id.* at 1135. In its contract with Kemper, BellSouth expressly retained the power to provide Kemper with specific instructions regarding specific claims, and Kemper was required to follow those instructions. *Id.* at 1136. Thus, BellSouth in effect retained the power to control the disposition of any claims. *Id.* Based on this retained power, the *Williams* court applied a heightened standard of review. *Id.*

Unlike in *Williams*, in this case there was no contractual agreement between SBC and Sedgwick requiring that Sedgwick strictly comply with any instructions given by SBC. Rather, as indicated above, SBC gave Sedgwick the "exclusive" authority to approve or deny short-term disability claims. Aplt. App., Vol. 2 at 368; *see also id.*, Vol. 3 at 769-70 (stating under agreement Sedgwick was to "Review all Disability Claims" and make final determination of all appeals). Furthermore, the information SBC provided to employees, such as Ms. Atkins, stated that only Sedgwick had the authority to determine whether an employee qualified for short-term disability benefits. *See id.*, Vol. 3 at 857. At most, there is only the possibility that SBC could retain administration of some claims. *See id.* at 751 (suggesting in contract between SBC and Sedgwick that SBC can retain administration of claims). Nothing, however, indicates it did so with respect to Ms. Atkins' claim or any other claim, or that once a claim was assigned to Sedgwick, SBC could regain control of the claim. Thus, the district

court correctly concluded that Ms. Atkins failed to prove a conflict of interest and therefore there was no basis for applying a heightened standard of review.[2]

II.

Next, Ms. Atkins argues that even under the pure arbitrary and capricious standard, the district court erred in finding that the denial of her short-term disability claim was supported by substantial evidence in the record. She contends "the district court engaged in a rubber-stamp review of the adverse claim decision and wholly failed to evaluate the reasonableness of the adverse claim decision in light of the totality of the record." Aplt. Br. at 25. Also, she argues that the district court's finding that Dr. Shadid's mental status examination was unreliable or lacked specificity overlooked the fact that Dr. Shadid provided his mental status examination results on the very form provided by Sedgwick.

---

[2] Ms. Atkins argues for the first time on appeal that a less deferential arbitrary and capricious standard of review should apply based on the serious procedural irregularity of Sedgwick's selectively reviewing the record by failing to mention her September 2003 hospitalization in its final decision. Generally, we will not consider an issue not raised before the district court. *See Ray v. Unum Life Ins. Co. of Am.*, 314 F.3d 482, 487 (10th Cir. 2002). Even if we were to consider the argument, we would not apply the sliding scale arbitrary and capricious standard. Sedgwick's failure to note the September hospitalization did not have significance for two reasons: Sedgwick had granted benefits immediately after the hospitalization and it denied benefits only after concluding the objective medical evidence failed to substantiate Ms. Atkins' inability to perform job duties after October 19, 2003. Thus, this is not a case where a conflict of interest, dishonesty, or an improper motive can be attributed to the decision to deny benefits. *See Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006). Nor can it be said that Sedgwick failed to consider the relevant circumstances at issue. *Id.*

"In applying the arbitrary and capricious standard, the decision [denying short-term disability benefits] will be upheld so long as it is predicated on a reasoned basis." *Adamson*, 455 F.3d at 1212. The decision need not be the only logical decision or the best decision, so long as it is reasonable. *See Kimber v. Thiokol Corp.*, 196 F.3d 1092, 1098 (10th Cir. 1999).

> Indicia of an arbitrary and capricious decision include, *inter alia*, lack of substantial evidence. Substantial evidence is such evidence that a reasonable mind might accept as adequate to support the conclusion reached by the decision maker. It requires more than a scintilla but less than a preponderance. In determining whether the evidence in support of the administrator's decision is substantial, we must take into account whatever in the record fairly detracts from its weight. Moreover, substantiality of the evidence is based upon the record as a whole.

*Rekstad v. U.S. Bancorp*, 451 F.3d 1114, 1119-20 (10th Cir. 2006) (quotations and citations omitted).

Applying these standards and upon consideration of the entire administrative record, we conclude that Sedgwick's denial of short-term disability benefits was supported by substantial evidence and was reasonable. When Sedgwick denied a continuation of benefits and informed Ms. Atkins of her right to appeal, it provided her with its appeals procedures information. That information directed that upon filing an appeal she should ask her treatment providers to submit a clear outline of her level of functionality, a description of how that level of functionality impacts her ability to work and her daily activities, a detailed description of the rationale for her level of functionality, clinical

documentation supporting the treatment provider's rationale for the disability

determination, findings from a formal mental status examination including

clinical presentation and interaction, observations made by the treatment provider

during office visits and therapy sessions, and dosage of and responses to

medication. Aplt. App., Vol. 1 at 243. In addition, the SMAART Guide, which

was provided to employees, states that an employee must provide objective

evidence of disability. *Id.*, Vol. 3 at 857 ("Some treatment providers . . . believe

that just providing a diagnosis is sufficient in order to determine disability. It is

not. Objective medical examination findings are also necessary to support the

diagnosis."). Also, the Guide states that if an employee does not return to work at

the end of the approved period for absence, additional objective medical evidence

is required to support the treatment provider's recommendation that disability

benefits continue. *Id.*

Despite these clear requests for detailed information concerning her ability

to work, including a mental status examination, Ms. Atkins never provided the

needed information or indicated that a formal mental status examination could not

be obtained or that her level of functionality could not be ascertained. Instead,

she provided only brief and conclusory medical information. *Cf. Kimber*,

196 F.3d at 1099 (holding medical documents provided insufficient evidence of

disability because they did not contain supporting clinical data for conclusion

reached). Dr. Shadid's responses to the questions on the form provided by

Sedgwick provided no detailed information establishing Ms. Atkins' inability to function at work, nor did it show the results of a formal mental status examination. Ms. Burrows admitted that she did not perform a mental status examination, because she believed her role was therapeutic and supportive. As Sedgwick found, there was no objective evidence of Ms. Atkins' disability and Dr. Shadid's and Ms. Burrows' reports primarily consisted of a listing of Ms. Atkins' self-reports concerning her alleged disability. Thus, it was not unreasonable for Sedgwick to deny benefits based on the lack of objective evidence. *See Johnson v. Metro. Life Ins. Co.*, 437 F.3d 809, 813 (8th Cir. 2006).

In addition to generally arguing that the denial of her short-term disability benefits claim was not supported by substantial evidence in the record, Ms. Atkins also argues that the district court erred in failing to find that Sedgwick's review was riddled with the following procedural irregularities, selectivity, and inconsistencies: (1) Sedgwick gave too much credit to the opinions of the physicians employed by Sedgwick, who reviewed the record, but did not examine her, and not enough credit to her healthcare providers' opinions; (2) Sedgwick previously determined that similar medical evidence was sufficient to approve her short-term disability claims on May 19, 2003 and October 3, 2003; (3) Sedgwick selectively reviewed the records she presented to support her relapse claim, including failing to mention her September 2003 hospitalization in its final decision denying benefits; and (4) Sedgwick failed to note that SBC had

prohibited her from the workplace until she underwent an Employee Assistance Program (EAP) examination. We discuss each of these five assertions in turn, keeping in mind, however, that we do not consider whether discrete acts by the claims administrator are arbitrary and capricious, but only whether the ultimate decision denying benefits is arbitrary and capricious, *see Evans v. Unumprovident Corp.*, 434 F.3d 866, 876 (6th Cir. 2006).

We disagree with Ms. Atkins' assertion that Sedgwick gave too much weight to the opinions of Sedgwick's reviewing doctors and not enough weight to the opinions of Dr. Shadid and Ms. Burrows. Although Sedgwick was not permitted to arbitrarily refuse to credit Ms. Atkins' reliable medical evidence, including the opinions of Dr. Shadid and Ms. Burrows, it was not required to accord special deference to those opinions. *See Black & Decker Disability Plan v. Nord*, 538 U.S. 822, 825 (2003). Nor was it required to credit their opinions over other evidence that was relevant to her medical condition. *See id.* Because, as the district court decided, Ms. Atkins' "evidence was not thorough enough to be considered reliable," Aplt. App., Vol. 3 at 890, and the additional medical evidence she submitted "did not meet the degree of specificity [she] had been advised was required," *id.* at 891, Sedgwick gave proper weight to Dr. Shadid's and Ms. Burrows' opinions. Sedgwick's reliance on its consulting doctors' paper review of the medical records of Dr. Shadid and Ms. Burrows was not, under the circumstances presented here, arbitrary and capricious. *See Hufford v. Harris*

-13-

*Corp.*, 322 F. Supp. 2d 1345, 1359 (M.D. Fla. 2004); *see also Davis v. Unum Life Ins. Co. of Am.*, 444 F.3d 569, 577 (7th Cir. 2006) (recognizing it is common and reasonable for doctors to examine medical records and arrive at professional opinions), *cert. denied*, No. 06-70, 2006 WL 2007574 (U.S. Oct. 2, 2006); *Voight v. Metro. Life Ins. Co.*, 28 F. Supp. 2d 569, 580 (C.D. Cal. 1998) (accepting opinion of independent medical reviewers rather than opinion of treating doctor is not proof of arbitrary or capricious conduct).

Sedgwick properly treated the more recent documentation from her healthcare providers differently in the denial of her request for a continuation of short-term disability benefits than it treated similar documentation in its prior approvals of benefits. The prior approvals occurred immediately after her hospitalizations. We agree with the district court that it was not unreasonable for Sedgwick to require more specific information regarding Ms. Atkins' ability to work when considering a continuance of benefits claim, since her most recent hospitalization had occurred forty days earlier. *See Kimber*, 196 F.3d at 1099 (holding it is not arbitrary and capricious to request additional evidence of continuing disability).

Nothing beyond Ms. Atkins' assertion suggests that Sedgwick selectively reviewed the medical records. It is curious that Sedgwick did not mention Ms. Atkins' September 2003 hospitalization in its final decision. But it did approve short-term disability benefits after that hospitalization and correctly

-14-

requested additional, objective evidence showing that disability continued. Considering the totality of the record in this case, we cannot conclude that Sedgwick's denial of benefits was unreasonable simply because it failed to mention Ms. Atkins' September 2003 hospitalization.

It is true that Sedgwick did not mention SBC's requirement that Ms. Atkins go through its EAP program and obtain a fitness for duty certification before she would be allowed to return to work. Aplt. App., Vol. 1 at 259. SBC required this after Ms. Burrows told Ms. Atkins' former attorney in September 2003 that Ms. Atkins had mentioned blowing up the SBC building and targeting a co-worker due to anger. At that time, Ms. Burrows believed that Ms. Atkins was homicidal and presented a danger to herself and others. These threats were made during the time Ms. Atkins was receiving in-patient treatment and during the time when she was receiving short-term disability benefits. While Sedgwick perhaps should have mentioned this, we cannot say that its failure to do so caused the denial of short-term disability benefits to be arbitrary and capricious.

We agree with the district court that although the record contains evidence supporting a disability claim, the question on review concerns the reasonableness of Sedgwick's decision to deny Ms. Atkins short-term disability benefits. Sedgwick provided a reasonable basis for its decision. Because the decision to deny Ms. Atkins continued short-term disability benefits was not arbitrary and

capricious, the district court properly granted summary judgment in favor of defendants.

The district court's judgment is AFFIRMED.

Entered for the Court


Monroe G. McKay
Circuit Judge